BAARS & DOWNING, PLAINTIFFS IN ERROR, VS. GORDON & STAMP, DEFENDANTS IN ERROR.

1. The bond required of plaintiffs on suing out an attachment, to be signed by two securities, if joint, and not joint and several, is good under the statute.

2. In framing an attachment bond signed by the plaintiffs and two others, conditioned that plaintiffs will pay all damages, &c., the two other signers are "securities," whether so named in the writing or not.

3. When a suit is commenced by filing a præcipe for summons *ad resp.* and for a writ of attachment against property, the summons being issued and served on a person not a defendant, and the attachment being served by levy on defendants' property, a general appearance and obtaining time to plead by defendants is a waiver of regular service of process ; and a dissolution of the attachment does not abate the suit.

4. Where two persons affix their names against one seal or scrawl it is a good sealing.

On September 13, 1883, plaintiffs in error, by their attorney, filed a præcipe for a summons and for a writ of attachment against the defendants' property. An affidavit made by one of the plaintiffs was also filed stating that defendants were indebted to them in a sum stated and that defendants were non-resident.

A bond of plaintiffs and two other persons was filed and approved, to secure defendants against costs and damages by reason of improperly suing out the attachment. This bond was in terms joint and not several, binding themselves, their heirs, executors and administrators. The summons was returned by the sheriff, " executed by leaving a copy with Captain Wygate, master of the steamship Nettlesworth," September 14, 1883. The writ of attachment was served September 13, 1883, by levying on defendants' interest in a steamship.

Declaration was filed January 4, 1884, and the record recites that " on the 11th day of January, 1884, came the defendants, by E. A. Perry, their attorney, and entered their appearance herein." February 2, 1884, the Judge made this order: " For cause shown to enable pleas to be sent to Sunderland, England, for verification, time for defendants to plead in above cause is hereby extended to rule day of March, 1884."

On March rule day defendants' default for not pleading was entered.

On the 10th March, defendants' attorney entered their motion to set aside the defaults for reasons specified, and " for a short extension of time to enable documents and pleas for defence to arrive." On March 14, defendants' attorney entered motion to dissolve the attachment on the ground that the allegations in plaintiffs' affidavit are untrue as to the debt or sum demanded; and on the 16th April entered a further ground of motion to dissolve the attachment, because the bond is not such as is required by law.

On April 21, defendants filed affidavit that the allegations in the plaintiffs' affidavit are untrue as to the debt or sum demanded.

On April 21, the Judge made an order granting the mo-

tion to set aside the default, with leave to defendants to plead.

On April 25th, this order was modified by requiring defendants to plead *instanter*.

On April 26th, default for want of a plea was entered by the court.

On the same day the court entered an order dissolving the attachment.

On the 30th of April, defendants' attorney entered a motion that the suit stands abated and dismissed from the court, "because the suit and the only suit in which there can be any claim of service of process, and to which it can be claimed the defendants have in anywise appeared, was commenced by attachment, and the same has been, on motion, dissolved before plea to the action."

In support of this motion counsel made affidavit that his action in the cause was taken with reference to the attachment only, and that he had no notice that it was claimed that a personal suit by summons had been commenced until afterwards and during the then present term.

On May 3d, the court entered judgment dismissing the suit with costs against plaintiffs, who now assign for error: 1. The opening of the default.   2. The dissolution of the attachment.   3. The dismissal of the suit.

*W. A. Blount* for Plaintiffs in Error.

*E. A. Perry* for Defendants in Error.

I. The first assignment of error cannot be considered here, for " neither party will be permitted to surprise or mislead his adversary, or to make objections which might have been obviated had they been presented for the consideration of the court below."   Southern Life Insurance Company vs. Cole, 4 Fla., 359-363.

The lack of affidavit might readily have been obviated, had objection been made and affidavit required.

II. The court did not err in dissolving the attachment.

If by inspection of the record it could be presumed that there were no other grounds for the dissolution, the dissolution was properly made, " because the bond is not such as required by law."

1st. It is not so executed as to constitute it the bond of the plaintiffs or even of either one of them without evidence *aliunde*.

The jurisdiction of the court or clerk to issue attachments is of such special character, and so limited by statute, that all the matters requisite to give jurisdiction must appear upon the face of the proceedings and the " bond must stand or fall upon its own merits," and the requirements necessary to give jurisdiction can neither be supplied or supplemented by presumptions. Wark vs. Titus, 12 Fla., 628.

The plaintiffs as partners were not invested with any right to use a common seal, or to make a bond in their firm name.

It is a rule that an obligor must be sued by the name under which he has bound himself. 1 Chitty Pldg., 265, (16 edition); 2 Chitty Pldg., 4.

The statute, in requiring plaintiff to enter into bond, clearly contemplates that he or they shall so execute his or their bond that the defendant can at law enforce the obligation.

Suit upon a bond could not be maintained against a firm instituted simply against it in its firm name.

Partners may unitedly do business in and bind themselves by the firm name outside, but when required to enter the portals of a court or to do any act therein, they must

come as individuals, otherwise they would be enjoying a privilege confined to corporations.

That the Legislature contemplated a bond formal in all its parts, and that the attachment may be dissolved by reason " of any informality in the same," is evident from Section 10, Act of 1834. McClellan's Dig., 113, §15.

2d. But a still more serious, a fatal, objection to the bond is its form and character. It is a mere joint bond—a kind of bond not contemplated in a requirement of a bond of a principal, "with at least two good and sufficient securities," for the purpose intended by the statute.

That jurisdictional requirement intended to give the defendant all the security of the obligation of not only the principal but of both of the securities and their estates.

This the defendant could only have by a joint and several bond such as is always contemplated in such requirement.

The plaintiffs in making their obligation only a joint obligation not only ignored the common understanding of such a requirement, but they ignored and disregarded the practice of half a century under the statute, and the legislative construction of the requirement as seen in the form prescribed for an attachment bond under this statute in Justices' courts. Thompson's Dig., 486.

The purpose of the statute would be frustrated and the defendant most seriously prejudiced by substituting a joint for the contemplated joint and several bond.

In case the securities and the principal enter into a joint bond, and one of the securities dies, there is left to the defendant not the security afforded and intended by the obligation of a principal and at least two securities, but only his right of action against the principal and one security, while if the bond be joint and several, he has his right of

action against the principal and the two securities no matter if one or all the obligors die.

Mr. Addison lays down the distinction in these words:

"If one of several joint contractors dies, the survivors must be sued to the exclusion of the personal representatives of the deceased; but if the contract be a joint and several contract, the action may be brought either against the personal representative or the survivors." Addison on Contracts, 969, (mar. p.); also U. S. vs. Price, 9 How., 83-91—*et seq*.

Thus, aside from the fact that by adopting the form found in Thompson's Dig., the General Assembly gave a legislative construction to the statutory requirement which is greatly strengthened by the uniform practice since 1834, it is clear a mere joint bond does not meet the evident intent of the legislature in providing for "two good and sufficient securities." The intent evidently was that the defendant should have his right of action against the two —which he has if the bond is joint and several even though one or both die, while if the bond is made like the bond here, a mere joint bond, the death of one of the two securities leaves him with a right of action only against the principal and one security, and the death of the two securities leaves him nothing but a right of action against the principal, thus entirely evading the very purpose in requiring two securities. Two securities are required, no matter how secure a bond by the principal alone or by the principal with one security might make the defendant.

The purpose of the requirement can only be met by a joint and several bond.

How can a bond like this secure to a defendant in attachment what the legislature clearly intended he should have —a right of action against the estates of the principal and " at least two good and sufficient securities ? "

The court will not fail to observe that the statute requires not merely two good and sufficient sureties, but two good and sufficient " securities," and to constitute two good and sufficient securities, the estates of both and each of the sureties must be bound, even though one or both should die—which can only be done by a joint and several bond.

In case of death of one or both securities, defendants would have no remedy even in equity.

" For equity will not hold a surety liable when he is discharged at law, and in case of a joint obligation and of the death of the surety, the remedy at law is gone as it respects the legal representatives of the surety."

" If the obligation is joint and several a suit at law may be sustained against the representatives."    Fielden vs. Lahens, 6 Blatchf., 524.

" Where a party whose obligation to pay arises *from his contract only*—*e. g.* a surety—is discharged at law, and where there has been neither fraud nor accident, equity will not extend his liability."    U. S. vs. Archer, 1st Wal. C. C., 173 ; U. S. vs. Price, cited *supra.*

Without the legislative construction universally followed for fifty years, there could be no difficulty in arriving at the conclusion that the intention of the statute was that the property of the principal and of at least two good and sufficient securities should stand charged with the liability assumed in favor of a defendant in attachment.

III. The court did not err in the dismissal of the suit.

The suit dismissed is the suit by attachment, notice of the institution of which was advertised—which advertisement brought the defendants in to defend that suit.    It did not require them to defend a different suit—a suit commenced by the issuing of a summons.

There were two distinct suits, and the court below has only been called upon by the defendants or by the plaintiffs

to notice the one of which the defendants had notice by publication—the suit commenced by attachment, the process in which was the writ of attachment and the notice, the advertisement. As to the suit by summons, it stands as it has always stood—upon the plaintiffs' præcipe and upon an unserved summons.

Following in the same line as the decision of this court in Loring vs. Wittich, 16 Fla., 623, the Supreme Court of Illinois, June Term, 1877, " where plaintiff brought suit in assumpsit and at the same time sued out a writ of attachment in aid of the former, which was levied on property of defendant, the defendant making defence to the writ of attachment, but none to the suit in assumpsit, the plaintiff obtaining judgment thereon by default, on an appeal to reverse the judgment against the defendant because it was rendered while he was in court making defence to the writ of attachment, held that there was no error in such a proceeding, the two branches of the suit being distinct and independent." Schulenburg vs. Farwell, cited from Cen. Law Journal, Vol. V, 169.

Had the plaintiffs been able to execute their process in the personal suit in assumpsit, the court would have had jurisdiction to render default in that suit and follow the default by final judgment, as in Loring vs. Wittich and Schulenburg vs. Farwell, cited *supra.*

But without such service in that suit the court had no jurisdiction to take a single step in it—not even to dismiss it—and the whole record shows that the plaintiffs did not ask of the court, and the court did not presume or pretend to take any action in the suit in assumpsit.

The defendants' obtaining extension of time to defend was not claimed in the court below to have any reference to anything but the suit by attachment. See affidavit of plaintiffs' attorney, Record, p. 24.

The court held, it may be properly, that the obtaining such extension of time amounted to an appearance in the suit by attachment, and the court construed the term plea in the order obtained as signifying the plea to the declaration (which was the declaration in the attachment suit, as is evident from the time of filing,) instead of, as intended by the attorney, as any defence to the attachment, whether plea in abatement for want of jurisdiction, as in Kennedy vs. Mitchell, cited *supra*, or other defense.

The court below was never asked by the plaintiffs, and never thought of extending such intervention on the part of the attorney to an appearance to a suit in which there had been no sort of notice given to the defendants.

And it was certainly too late for the plaintiffs to ask it after the court had decided against them in the attachment suit.

Of course no effect can be give to the clerk's statement in the transcript, page 13, that the defendants came and entered their appearance. Such statement is no part of the record of the court below, and the affidavit of plaintiffs' attorney, page 24, shows that the only basis of the claim that there had been any appearance prior to the motion to dismiss was the order allowing defendants further time to bring in their defense.

The plaintiffs have the indisputable right to keep in the court below their præcipe and unserved summons—and the court has not sought to deprive them of the right.

But as to the suit by attachment—the suit advertised by them—inasmuch as the attachment was " dissolved before plea to the action," the suit was by force of the statute abated and dismissed from court. McClellan's Digest, p. 116, sec. 27.

The court below could not substitute either lapse of time

or neglected duty to plead or anything else for a " plea to the action." Nothing but a plea to the action could give the court jurisdiction to render a judgment in the suit after the dissolution of the attachment. There could be no better evidence of no plea to the action than a default for want thereof, and such default could in no wise operate to defeat the plain provision of the statute.

The action of the court below should be affirmed with costs.

THE CHIEF JUSTICE delivered the opinion of the court:

As to the first error assigned, the opening of the default, which, by the statute, is within the sound discretion of the court, we cannot say that there was any abuse of discretion. Russ vs. Gilbert, 19 Fla., 54. But there was a subsequent default entered against defendants, which was not set aside except by the effect of the final judgment.

2. As to the dissolution of the attachment, it appears by the record and by the briefs of counsel that it was dissolved on the ground that the bond was joint and not several as to the principals and sureties; or that it was signed by only one of the principals, signing in the copartnership name. The precise ground of dissolution of the writ is not stated.

The statute requires that the plaintiff shall by himself or his agent or attorney enter into bond with at least two sufficient securities. That this paper was a bond is not denied, but it is claimed that it is not a several obligation, and that it is not such a security as the law contemplates, because in case of the death of one of the securities there is no remedy against the representatives of the deceased joint obligor. This is not a legitimate question here. This bond is signed by the principals and by two others, binding not only themselves but their executors and administrators. These two others are securities, parties who have bound themselves

with the parties to the suit to secure performance by the latter according to the condition of the bond.

As words of severalty are not employed in the statute, a joint bond is a compliance with the law. This was expressly held in Pickersgill vs. Lahens, 15 Wallace, 140.

The objection that the bond was signed by the copartnership name is not sustained by the copy of the record before us. The names of both the partners are attached as signers, and though they both sign against one seal, it is a good sealing. 1 Fla., 52.

As to the signing of attachment bonds by one partner in the partnership name, see Jeffreys vs. Coleman, 20 Fla., 536 ; Ross, Keen & Co. vs. Steen, ib., 443.

The other ground of the motion to dismiss, to wit: the denial of the allegation as to the debt or sum demanded, does not appear to have been passed upon. There was no trial of the issue made on that subject.

3. As to the dismissal of the suit.

It appears that the suit was commenced by filing a præcipe for a summons *ad respondendum* against defendants and an attachment against their property. The summons was issued and returned served on a person not a defendant. The attachment was executed by levying upon property. What publication was made, if any, does not appear. The writs were issued in September, and in January following, after declaration filed, the defendants entered their appearance by attorney, and on showing cause and " to enable pleas to be sent to England for verification," time for defendants to plead was extended by order of the Judge.

Again, on moving to set aside a default, defendants' counsel placed the motion on the ground that the documents and pleas for defence had been posted, but had not arrived.

This must be held to be a general appearance by the de-

fendants to the suit commenced by the filing of the præcipe. The papers were on file and were notice to them, when they appeared, of the manner of commencing the suit. The fact stated by the attorney that he did not know that a summons had been issued and supposed the suit was commenced by attachment, does not alter the fact that the files of the court afforded all the means of knowing the nature of the suit and of the process.

By appearing to the action the defendants placed themselves precisely in the situation in which they would have stood had process been served upon them. Pollard vs. Dwight, 4 Cranch, 421 ; S. P., 3 Cr., 496 ; 8 Wheat., 699 ;. Pearce vs. Thackeray, 13 Fla., 574 ; Smith vs. Bulkley, 15 Fla., 66.

The judgment dismissing the suit, and the order dissolving the writ of attachment, are reversed.